# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>GLOBAL COMPUTER ENTERPRISES, INC.,<br><br>　　　Debtor. | Case No. 14-13290-RGM<br>(Chapter 11) |
| GLOBAL COMPUTER ENTERPRISES, INC.,<br><br>　　　Plaintiff,<br><br>vs.<br><br>STEESE, EVANS & FRANKEL P.C.,<br><br>　　　Defendant. | Adv. Proc. No. 15-01063 |

## **MEMORANDUM OPINION**

This case was before the court on the debtor's Motion to Voluntarily Dismiss this case pursuant to Federal Rule of Bankruptcy Procedure 7041 which incorporates Rule 41 of the Federal Rules of Civil Procedure. The debtor proceeds under Rule 41(a)(2).

The Court of Appeals for the Fourth Circuit explained the purpose and operation of Rule 41(a)(2) in *Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir. 1987). It stated:

> The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced. *McCants, supra,* 781 F.2d at 856; *Alamance Industries Inc. v. Filene's,* 291 F.2d 142, 146 (1 Cir.1961), *cert. denied,* 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961). To fulfill this purpose, Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice. In considering a motion for voluntary

1

dismissal, the district court must focus primarily on protecting the interests of the defendant. *McCants, supra,* 781 F.2d at 856; *Hoffman v. Alside, Inc.,* 596 F.2d 822, 823 (8 Cir.1979); *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5 Cir.1976).

*Id. See also S.A. Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir.1986).

The district courts have applied this standard. Judge Ellis in *RMD Concessions, L.L.C. v. Westfield Corp.,* 194 F.R.D. 241, 242–43 (E.D. Va. 2000) wrote:

> The Federal Rules of Civil Procedure provide that an action may not be dismissed once the defendant has filed its answer or has moved for summary judgment, except "upon order of the court and upon such terms and conditions as the court deems proper." Rule 41(a)(2), Fed.R.Civ.P. Voluntary dismissal under this Rule is favored, and a plaintiff's motion to dismiss pursuant to Rule 41(a)(2) "should not be denied absent substantial prejudice to the defendant." *S.A. Andes v. Versant Corp.,* 788 F.2d 1033, 1036 (4th Cir.1986); *see also Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir.1987) ("The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced."). Toward that end, under Rule 41(a)(2) a district court may, in lieu of denying plaintiff's motion to dismiss, "impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice." *Davis,* 819 F.2d at 1273. Given this, district courts should "impose only those conditions [that] actually will alleviate harm to the defendants." *American Nat'l Bank and Trust Co. of Sapulpa v. Bic Corp.,* 931 F.2d 1411, 1412 (10th Cir.1991).

*Id.*

Judge Ellis identified one prejudice to a defendant: when a voluntary dismissal potentially unravels the effect of an earlier legal ruling. In *RMD Concessions, L.L.C.*, the defendant had successfully removed the case to federal court and prevented remand on the plaintiff's motion to remand. Allowing dismissal without prejudice would have permitted the plaintiff to bring the action in any court and, effectively, avoid the unfavorable ruling. It appeared that the plaintiff wanted to re-file the case in another jurisdiction. In order to preserve the favorable ruling the defendant had obtained, the district court dismissed the case on the condition that it only be brought in a state or federal court in Virginia.

Judge Jackson addressed the question in *Stretchline Intellectual Properties Ltd. v. H&M Hennes & Mauritz LP,* 2015 WL 789185 (E.D. Va. Feb. 24, 2015). He discussed four principal factors which the debtor also discusses:

> (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a dispositive motion is pending. *Hobbs v. Kroger Co.,* 175 F.3d 1014, 1014 (4th Cir.1999) (unpublished) (*per curiam*).

*Id.* at *2. Judge Jackson dismissed the case with prejudice in large part due to the advanced stage of the litigation.

The Fourth Circuit addressed a voluntary dismissal in *Bridge Oil, Ltd. v. Green Pacific A/S*, 321 Fed.Appx. 244 (4th Cir. 2008). It affirmed the district court's dismissal of an unjust enrichment claim noting that "although some discovery had taken place, it was minimal and would have occurred . . . even without the . . . unjust enrichment claim." *Id.* at 245-46. It also noted that it was satisfied with the movant's explanation for the requested dismissal.

In this case, the debtor filed its voluntary petition in bankruptcy in this court on September 4, 2014. About three weeks earlier, the General Services Administration had approved a contract to purchase substantially all of the debtor's assets. The sales motion was filed on September 5, 2014, a hearing was held on an expedited basis on September 18, 2014, and the order authorizing the sale was entered on September 19, 2014. The debtor received about $20 million from the sales.

The driving factor in filing the petition and in selling the company's assets was a criminal investigation of the debtor by the Department of Justice. While there had been substantial discussions between the debtor and DOJ, the parties had not reached an agreement by October 28, 2014, when the debtor filed a motion to dismiss the case. It proposed to pay creditors in one of three

3

manners: the amount it determined was appropriate, as stated in the motion; the amount the debtor and creditor negotiated; otherwise, the creditor could pursue its collection remedies. The United States Trustee and DOJ opposed the motion. DOJ moved to convert the case to a proceeding under chapter 7 on October 31, 2016. Noting that the debtor had sold all of its assets, it stated:

> The choice between dismissal and conversion here is stark. Dismissing the case would award a questionable exploitation of the bankruptcy process, prejudice the United States (by far the largest creditor in this case), result in unequal access to and distribution of estate assets, and compound the conflicts of interest that have arisen due to Debtor's attempt to employ the same counsel to represent itself [and] a creditor of the estate. On the other hand, conversion to chapter 7 would provide a disinterested trustee who could ensure a streamlined claims process, equal access to estate assets to pay allowed claims, and fair treatment of all creditors in accordance with provisions of the Bankruptcy Code.

Motion to Covert at ¶4 (*In re Global Computer Enterprises, Inc.,* Case No. 14-13290-RGM, Docket Entry 112).

The United States Trustee also moved to convert the case to chapter 7 on November 5, 2014. She stated:

> The Debtor further argues that creditors will be paid promptly outside of bankruptcy. . . . Confidence in the Debtor's structured dismissal and promise of prompt payment outside of the bankruptcy process is not high.
>
> This lack of confidence is because all claims listed on the schedules, that were signed under penalty of perjury, were or could be in the future disputed, contingent, or unliquidated.
>
> . . . What assurance is there that the creditors' claims listed on the Debtor's motion to dismiss will not be repudiated once the case is dismissed?
>
> The Debtor further argues that dismissal will not prejudice the creditors. On the contrary, dismissal will prejudice the creditors.
>
> On information and belief, the Debtor has approximately $22 million in its debtor in possession account. While in bankruptcy, the Debtor cannot spend money, outside the ordinary course of business, without notice and Court approval. Presently, the Debtor's money is "secured" by the bankruptcy laws and the creditors

4

> are protected. More importantly, creditors have a reasonable expectation of a distribution. If the case is dismissed, creditors will have to initiate or reinstate litigation to liquidate and satisfy their claims. It will be a race to the courthouse. This is precisely what the Bankruptcy Code seeks to prevent.

Response to Motion to Dismiss Case and Motion to Convert at 2 (*In re Global Computer Enterprises, Inc.,* Case No. 14-13290-RGM, Docket Entry 128).

The United States Trustee appointed an unsecured creditor's committee on November 3, 2014.

On November 12, 2014, the debtor voluntarily withdrew its motion to dismiss the case.

The debtor and DOJ later reached a settlement that was approved by the court and the debtor filed a motion to pay creditors. It was anticipated that the case would be dismissed when all creditors were paid. The motion set out the amounts to be paid to creditors and provided that they would be paid within three business days. Disputed claims were to be paid within three business days after entry of the order allowing the claim. The motion provided that Steese, Evans & Frankel, PC's disputed claim, would be settled by the parties or the debtor would file an objection to the claim no later than May 7, 2015. The motion was granted on these terms and included a provision that the debtor maintain a minimum balance of $6 million in its debtor-in-possession bank accounts so that all creditors would be assured of full payment.

All creditors except SEF have now been paid. The debtor filed an adversary proceeding objecting to SEF's proof of claim on May 7, 2015. It amended the complaint twice. It now seeks to amendment it again, this time to add a new claim alleging that SEF defrauded it.

The case was set on the pre-trial docket to set a trial date when the debtor filed its present motion to dismiss. Substantial discovery has been completed. The parties estimate the trial will last about a week.

The debtor proposes to pay SEF's claim in full and then dismiss the case. However, payment is without prejudice to the debtor's claims in the adversary proceeding and its new fraud claim. In addition, payment is without prejudice to seeking recovery of the amount that it proposes to pay SEF before dismissal. Payment would be, in effect, illusory. Payment to SEF prior to dismissal is no better than the protection SEF presently enjoys. There is presently an order that segregates the maximum amount that SEF may be paid from all other funds of the debtor to assure payment if SEF is successful. The fund is not subject to the payment of any other expenses or claims, including administrative expenses.

SEF objected to the dismissal of the case.

The debtor is seeking to avoid the terms of the order authorizing payment to creditors which it sought. The order was in lieu of preparing a chapter 11 plan and seeking confirmation or of converting the case to a proceeding under chapter 7. It has complied with the order as to all creditors except SEF. Allowing dismissal on the terms proposed by the debtor would enable it to unwind the order authorizing payment of the creditors as to SEF.

Allowing dismissal at this point would prejudice SEF because substantial discovery has been taken and discovery has been completed. It was taken on the basis of the second amended complaint which is now ready for trial. The trial is before the court, without a jury. If the case is dismissed it will be refiled, according to counsel for the debtor, in the District of Columbia with the additional fraud count. It is not likely that if the case is refiled in the District of Columbia that it would be tried by the end of the year. It would also be tried to a jury. All of the discovery taken by SEF and the tactics and strategies developed are for a nonjury trial. To dismiss the case at this late date would cause significant additional work for SEF on a new fraud claim without the protection of the usual

6

court review of a late motion to amend that could substantially change the nature of the case and could substantially delay trial.

An important factor in a bankruptcy proceeding that is not present in civil proceedings in district courts is the purpose of a bankruptcy filing. In this case, a very rare case, there are funds available to return to the owners of the company. It is an equity case. This means that all creditors will be paid in full together with post-petition interest. The debtor in filing its petition sought the benefits of bankruptcy. Its motion to dismiss seeks to avoid the burdens of that same filing. It is unfair to the creditor not to have its claim be finally resolved and paid in the very near future – a benefit all other creditors have enjoyed.

The reasons given for asking for dismissal are not persuasive. Counsel first argues that this court cannot give it a fair trial. Counsel cited portions of the hearing on the application for compensation by the creditors' committee's counsel concluding that the court is biased against the debtor. The excerpts cited are from a colloquy during final arguments with debtor's counsel. Tr. 3/17/2016 at 35-63. He was arguing that the creditors' committee's counsel had spent too much time on the case. The creditors' committee's counsel had noted that the debtor's first motion to dismiss troubled the committee. Had it been granted the debtor would have left bankruptcy court with millions of dollars in its bank account and no enforceable court order requiring it to pay any creditor that it disputed or even the amounts uncontested in the filed proofs of claim. It left the burden on the creditors to find the debtor, sue the debtor, and collect from the debtor. There was no assurance that any of the millions of dollars would be available to pay any of the creditors by the time any of them had reached a final judgment. Nor was it appropriate to require creditors to go to any other court than this bankruptcy court to seek payment in a case in which equity expected a

return. The creditors' committee was rightly concerned and acted accordingly. The court noted that concern and found the suspicions and fears well-founded.

One of the difficulties with counsel's use of the colloquy with the court during his closing argument is that a judge uses the colloquy to assure himself that he understands counsel's argument and to probe counsel's argument for its strengths and weaknesses. In this case, counsel complained that he was not bankruptcy counsel for the debtor. He was not present during the earlier proceedings. "Your Honor, again, I was not living the role of counsel for GCE at that time, so I only know what I've been able to glean from reviewing the pleadings." Tr. 3/17/2016 at 37. The court replied that, "I understand, and I'm testing your arguments by throwing these things out to you and seeing how you respond to them." *Id.* at 37. The court announced its ruling after the colloquy with counsel had concluded and counsel had had an opportunity to address the court's comments. *Id.* at 64-88. All of the comments arose from the evidence presented at trial.

Counsel now argues that had he known that the court would question the good faith of the debtor's principals he would have tried the case differently and presented evidence of their good faith. Counsel knew or should have known of the creditors' committees' counsel's concerns about the propriety of the debtor's actions and their concern for its conduct. The question with respect to the fee application was whether counsel's actions were reasonable and necessary in light of the case which included the motion to dismiss and the debtor's conduct.

Counsel also argues that because the court found against his client on the fee application that the court must be biased against him. He argues, at least implicitly, that had the debtor appealed the decision it would have been reversed on appeal. But, the debtor did not take an appeal and, in fact, paid the allowed amount promptly. It is not likely that the debtor would have prevailed on appeal.

The debtor's expert witness basically tried to count the number of times certain words appeared in the fee application and concluded from the fact that the word "plan," for example, appeared so many times, and from only what appeared to be a cursory knowledge of the case, that the creditors' committee's counsel must have devoted too much time to developing a chapter 11 plan. The testimony was more complex than that but that type of analysis was the basis of the debtor's expert's opinion. The court found it to be more of an issue spotting exercise than an analysis of the application. The number of times a particular word or phrase appears in time records is interesting but does not tell the court that it appears too often or not often enough. There was no empirical evidence to compare the frequency of certain words or phrases. While helpful in spotting issues, it was not helpful in resolving the issues.

The creditors' committee's counsel, on the other hand, retained a chapter 11 practitioner who reviewed the fee applications, read the pleadings in the files, interviewed participants, and, based on his experience and investigation, concluded that the time and effort expended was reasonable. The debtor's expert had no chapter 11 experience and precious little bankruptcy experience. It is not surprising which expert's opinion was given greater weight.

Counsel's argument about the court's so-called bias is disingenuous. This judge will not hear the trial in this matter in any event. This judge announced his retirement months ago. Counsel acknowledged sheepishly that he had "heard a rumor" to this effect. In fact, a public announcement had been made and a request for applications for the position had gone out before counsel drafted his motion to dismiss. Counsel acknowledged that he had no grounds for filing a recusal motion. It should have been apparent to counsel, given the length of the prospective trial and the time frame within which it will be tried, that the matter will be heard by another judge.

9

Counsel also attempts to argue that the court coerced him into consenting to a final judgment being entered by the bankruptcy court. The transcript shows otherwise. The debtor filed an adversary proceeding objecting to the proof of claim because it wanted to recover the attorneys fees that it had paid to SEF prepetition. An objection to a proof of claim only defeats the proof of claim; it does not provide for an affirmative recovery. That can only be achieved by filing an adversary proceeding. The original complaint was principally one of the reasonableness and necessity of the work performed. The complaint was amended over the creditor's objection to allow a claim for legal malpractice. Both of these defenses, if successful, would defeat a proof of claim.

The issue arises out of *Stern v. Marshall,* 564 U.S. 462, 131 S.Ct. 2594 (2011) and *Executive Benefits Ins. Agency v. Arkison,* ___ U.S. ___, 134 S.Ct. 2165 (2014). In *Stern,* the Supreme Court held that the counterclaim filed in that case which was defined by statute as a core matter was beyond the jurisdiction of the bankruptcy court, an Article I court. Here, there is an additional claim coupled with an objection. The difference is that the claim raises defenses to the proof of claim that could have been brought simply by objecting to the proof of claim. The only reason an adversary proceeding is necessary is to effect a recovery beyond the proof of claim. The defenses to the proof of claim and the facts that are necessary to prove the claims are the same but would result in an affirmative recovery, if successful. The question thus arose as to whether the legal malpractice claim was a *Stern* claim or a non-*Stern* claim. It is an interesting question. Counsel acknowledged that there had been discussions with bankruptcy counsel before the hearing. When the court brought up the issue, counsel immediately interrupted the court and consented to the court entering final judgment. The court went on to explain the issue. Counsel did not wish to engage in any discussion or argument. He simply wanted to consent. The court's language was bold at the beginning of the

10

discussion, but despite counsel repeatedly consenting, the court briefly set out the issue, which counsel who is very experienced and skilled could have argued. In these circumstances the consent was voluntary.

The real purpose of the dismissal motion was to obtain a jury trial on the fraud claim that the debtor would like to include in its amended complaint. *See* Motion at ¶¶ 34, 43 and 46. An interesting question upon which this court does not render an opinion is if the complaint is allowed to be amended and the new claim for fraud is allowed, whether the prior consent on the existing counts extends to a new count, particularly where it might be argued that a claim for fraud would not necessarily be the grounds to defeat the proof of claim but is a separate claim.

In the circumstances presented by this case, SEF, the creditor, will be prejudiced by the case being dismissed without prejudice – and affirmatively providing that the payment to be made to SEF before dismissal is without prejudice to the debtor bringing a new lawsuit in another court outside Virginia to recover the payment and subject SEF to additional claims for legal malpractice and fraud. The debtor sought the benefits of bankruptcy and the benefits of its order to pay creditors. It must now bear the burdens that are so integrally entwined with those benefits.

Alexandria, Virginia
September 23, 2016

    /s/Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

eod: 9/23/2016

Copy electronically to:

Elena Iuga
David Swan
Eric Burns

19255